ROBERT E. KING, DEFENDANT, v. WESTERN ELECTRIC
COMPANY, PROSECUTOR.

ANNA ROSE KING, DEFENDANT, v. WESTERN ELECTRIC
COMPANY, PROSECUTOR.

Submitted October 4, 1938—Decided April 6, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the prosecutor, *Edwin Joseph O'Brien.*

For the defendants, *Congleton & McLaughlin (Richard J. Congleton,* of counsel).

The opinion of the court was delivered by

HEHER, J.   A chronological review of the litigation leading to these actions is essential to an understanding of the issues raised:

Averring that on December 4th, 1930, he suffered an injury by accident arising out of and in the course of his employment with the Western Electric Company, Robert E. King filed in the Workmen's Compensation Bureau, on June 29th, 1931, a petition for compensation under section II of the Workmen's Compensation act of 1911.  *Pamph. L., pp.* 134, 763.  Permanent "internal" injuries were claimed.  The employer interposed an answer admitting the employment but denying that the statutory notice of the alleged accident had been given and that the employe had sustained a compensable injury.

On December 9th, 1931, the parties filed in the bureau a "Stipulation, Agreement and Settlement," purporting to bind

the employer to pay, and the employe to receive, $1,500 "in a lump sum in full and final settlement for his injuries." It was therein declared that the employer agreed to make the stipulated payments "in order to settle the  *  *  *  disputed questions of fact, but without any prejudice or admission of liability on its part, and for the purpose of compromising all matters in dispute," and that the employe would accept the money "in full and final settlement of any and all claims for any disability whatsoever," and "waive his right to reopen his case at any future date for any cause whatsoever."

Deputy Commissioner Corbin, after a hearing, approved the agreement as "a fair and satisfactory settlement to both parties," and directed the payment of the amount thus agreed upon, "in a lump sum," as "a full and final settlement of the  *  *  *  case." Concededly, the merits of the claim were not then adjudicated. The "hearing" consisted merely of an expression by the employe of his willingness to make "final settlement" for the sum mentioned, "with no right to reopen," and of the opinion of a physician called by the employer that "the settlement" was "fair," since there was "a serious question" in his mind as to "whether the accident had any relation" to the heart condition. See *Streng's Piece Dye Works* v. *Galasso*, 118 *N. J. L.* 257. Shortly thereafter, the agreed sum was paid to the employe.

On December 3d, 1932, the employe presented to the bureau another petition alleging a permanent injury of the heart as the result of the accident referred to, and praying a determination of the amount of compensation due to him under the statute. The employer, by answer, denied "any permanent injury as a result of" the "alleged accident," and pleaded that the employe "did not file his claim for compensation within one year from the date of the alleged accident," and also that the original "petition  *  *  *  was compromised at a formal hearing held before" Deputy Commissioner Corbin on December 4th, 1931, and the "compromise" approved by order entered on December 9th, 1931. In due course, the employer made a motion to dismiss the petition "on the authority of *Federated Metals Corp.* v. *Boyko*, 11 *N. J. Mis. R.* 807; *affirmed, sub nom., Boyko* v. *Federated Metals Corp.*,

112 *N. J. L.* 87, and *Herbert* v. *Newark Hardware, &c., Co.,* 107 *Id.* 24; *affirmed,* 109 *Id.* 266." The motion was denied.

Again there was an agreement of compromise. A stipulation was entered for the payment of $3,624 to the injured employe "in a lump sum in lieu of all claims for any and all disability, temporary, total, permanent or otherwise, which amount is equivalent to forty per cent. of permanent total disability, or two hundred weeks compensation at the statutory rate of Eighteen and 12/100 ($18.12) Dollars per week," in addition to the sum previously paid, as "a final and complete close out and compromise of a litigated matter, and with the specific proviso that the claim cannot hereafter be reopened, either by the petitioner or the respondent, for either increased or decreased disability." The employe undertook to "repay to" the employer "the sum" therein "provided, in the event that he, his legal representatives or any one on his behalf" should thereafter "proceed further * * * or make further claim for compensation on account of" the claimed accident.

On May 25th, 1934, Deputy Commissioner Wegner entered "a judgment final" for the employe in accordance with the stipulation, "not subject to reopening." This likewise was not an adjudication on the merits. It was based upon the employe's expressed consent to accept the sum so provided as "a final close out," and the opinion of a physician called by the employer that "it is questionable whether or not the condition is due to trauma," and that therefore "the proposed compromise" was "fair and reasonable under the circumstances." The sum thus stipulated was paid to the employe on May 31, 1934.

On May 5th, 1936, the employe filed a petition for additional compensation based upon a claim of increased permanent disability. The employer moved to dismiss the petition upon the ground that the claim had been "previously compromised and finally disposed of," citing *Federated Metals Corp.* v. *Boyko, supra,* and *Herbert* v. *Newark Hardware, &c., Co., supra.* The motion was granted; and a formal order of dismissal was entered on June 25th, 1936. There was no appeal from this order.

On May 6th, 1937, the employe moved, on notice to the employer, for the vacation of this order of dismissal on the ground that it was "improvidently and erroneously entered." The motion was granted by Deputy Commissioner Wegner over the objection of the employer; and on the ensuing May 10th, an order was entered vacating the dismissal and reinstating the petition for compensation presented on May 5th, 1936.

The employer appealed from this order to the Essex Common Pleas; and, being in agreement that under the doctrine of *Breen Iron Works* v. *Richardson,* 115 *N. J. L.* 305, the appeal was well-founded, the parties stipulated for the entry of an order of reversal. An appropriate order was entered in the Pleas on December 3d, 1937.

In the *interim,* on September 28th, 1937, the employe filed a petition "for additional compensation by reason of increased disability." Permanent incapacity was again averred. The employer answered, once more denying the allegations of a compensable injury and an increase of disability. It was pleaded that the action was barred by the efflux of the statutory time, and also by the approved and executed agreement of compromise, and by the pendency of the appeal from the order dismissing the petition for compensation filed on May 5th, 1936. The last mentioned point was later waived.

On November 16th, 1937, the employer moved, pursuant to notice, for the dismissal of this petition on the grounds thus pleaded in the answer. The motion was denied by Deputy Commissioner Wegner; and the employer appealed to the Essex Common Pleas from the formal order entered on December 3d, 1937.

The employe died on February 17th, 1938, while this appeal was pending; and, when the appeal came on for argument, the employer maintained that his death had abated the cause of action. Judge Flanagan ruled that such interlocutory orders were not appealable under the statute, and he accordingly dismissed the appeal "for lack of jurisdiction."

This court issued a writ of *certiorari* to review the proceedings upon the petition filed on September 28th, 1937.

On April 8th, 1938, Anna Rose King, the deceased employe's widow, filed in the bureau a claim for compensation on behalf of the decedent's dependents. It was alleged that his death ensued from the claimed accidental injury suffered on December 4th, 1930. The employer answered denying that the employe's death was in anywise due to an accident arising out of and in the course of his employment. It was pleaded that the time limited by the statute for the presentation of a petition on behalf of the dependents had expired, and also that the "compromise" of the deceased employe's claim for compensation "is binding on the widow and other dependents." A motion to dismiss the petition on the grounds so pleaded was made on May 17th, 1938. There was also a motion to dismiss the pending petition for compensation filed by the deceased employe on September 28th, 1937. Both motions were denied by Deputy Commissioner Wegner; and an appropriate order was entered on June 15th, 1938.

This court thereupon allowed a writ of *certiorari* to review the proceedings had upon the petition filed by the widow on behalf of the dependents.

*First:* The initial point made is that the Compensation Bureau did not have jurisdiction to entertain the petition filed on September 28th, 1937, in that (a) it was not filed within the time limited by chapters 279 and 280 of the laws of 1931 (*Pamph. L., pp.* 704, 708; *R. S.* 1937, 34:15-41, 34:15-51) ; (b) the order of the bureau dismissing the petition for compensation for increased disability filed on May 5th, 1936, and the order of the Essex Common Pleas reversing the order of the bureau vacating the dismissal and reinstating the petition, are *res judicata* of the question of the bureau's right to consider a petition for increased disability; and (c) the second and final compromise agreement, made the basis of the judgment entered on May 25th, 1934, "constituted a final disposition of any and all [compensation] claims of" the employe. These jurisdictional questions must be resolved in the affirmative.

(A) Conceding that the lump sum payments, apportioned weekly in accordance with the statutory standard, embraced a period terminating within the two years immediately pre-

ceding the filing of the last petition for compensation for increased disability, and that therefore the last weekly install-ment thus provided for matured within that time, the employer nevertheless insists that the period of limitation began to run at the time the last payment of compensation was actually made, *i. e.,* May 31st, 1934. The statute has been differently construed. *Harris* v. *International Motor Co., 9 N. J. Mis. R.* 208; *Anderson* v. *Public Service Electric and Gas Co.,* 114 *N. J. L.* 515. See, also, *Hercules Powder Co.* v. *Nieratko,* 113 *Id.* 195; *affirmed,* 114 *Id.* 254.

This construction gives expression to the spirit of the statute, for the essence of the scheme is to provide weekly compensation, in lieu of wages, to the injured employe during the period of his disability, or to his dependents in the event of his death, not to exceed the prescribed maximum, and, in the effectuation of this purpose, to permit additional allow-ances for increased disability, if the application therefor is made within two years from the date of the last compensation payment, even though made under a formal award. *Ecken* v. *O'Brien,* 115 *N. J. L.* 33; *affirmed,* 116 *Id.* 94; *Tucker* v. *Frank J. Beltramo, Inc.,* 117 *Id.* 72; *affirmed,* 118 *Id.* 301; *J. W. Ferguson Co.* v. *Seaman,* 119 *Id.* 575. Commu-tation of the payments is out of the normal course, and has no relation to the employe's right to compensation.

The employer insists that, while this rule is applicable where the commuted sum is the present value of the compen-sation, "discounted at five per cent. simple interest," under paragraph 21 of the Compensation act, as amended (*Pamph. L.* 1919, *p.* 210; *R. S.* 1937, 34:15-25), it has no pertinency under the circumstances here presented, for the reason that, by the discount, the employe "pays a consideration for the commutation and should not therefore be penalized by having the statute run from the day such commuted payment is made," whereas in the instant case it "received no considera-tion for making payment in advance." This is an arbitrary and illusory distinction that is not found in the statute.

(B) Without passing upon the question of its effect upon pre-existing incapacity, the disposition of the first petition for compensation for increased disability was not *res judicata*

of the question of the bureau's jurisdiction to entertain the second petition for additional compensation for disability subsequently occurring. It is obvious that this is so; the point merits no discussion. See *Drake* v. *C. V. Hill & Co.*, 117 *N. J. L.* 290; *DeSantis* v. *Turner Construction Co.*, 122 *Id.* 590.

(C) And the claim that, by reason of the bureau's approval, the second and final compromise agreement was invested with the attribute of finality is plainly frivolous. *Tucker* v. *Frank J. Beltramo, Inc., supra; Ecken* v. *O'Brien, supra; P. Bronstein & Co.* v. *Hoffman*, 117 *N. J. L.* 500; *Streng's Piece Dye Works* v. *Galasso, supra; Radzikowski* v. *Public Service Co-ordinated Transport*, 15 *N. J. Mis. R.* 253; *Kolesnik* v. *Irvington Varnish and Insulator Co.*, 120 *Id.* 8.

The statute is grounded in a public policy that imposes upon industry the burden of care as regards its disabled servants, or their dependents in the event of death, where the accident is chargeable to the employment in the statutory sense; and its effectuation demands compliance with the prescribed system of compensation. This case is illustrative of how the declared policy may be nullified and of the reason for the provisions, referred to in the cited cases, designed to maintain the integrity of the scheme. From the outset, the employer has avoided the merits of the fundamental issue of liability. When the claim for compensation was first interposed, it tendered a settlement of $1,500, and the employe, fearing the loss of all, was induced to accept. The bureau did not inquire into the merits. Later, when the claim was again pressed, it paid $3,624 in settlement, and exacted from the employe a surrender of his right to compensation for disability subsequently occurring. Again, there was a *pro forma* approval by the bureau. And now, it invokes the provision of the statute limiting the time for the enforcement of the right to compensation, not only as regards such as the injured employe may have had in his lifetime, but as well the right that may have accrued to his dependents under the statute by reason of his death.

*Second:* It is next contended that the injured employe's "rights" were "terminated by his death," and the bureau is

therefore without jurisdiction to proceed under the petition for additional compensation filed on September 28th, 1937.

The point is not well made. *George T. Newell, Jr., Inc.,* v. *Workmen's Compensation Bureau,* 10 *N. J. Mis. R.* 405; *affirmed,* 110 *N. J. L.* 25. See, also, *Erie Railroad Co.* v. *Callaway,* 91 *Id.* 32.

Such a rule would put a premium upon delay in discharging the statutory obligation, and would not take into account the living and other expenses incurred by the injured employe in his lifetime. The right of recovery of such compensation as the statute provides to the date of the injured employe's death is implicit in the provisions of paragraph 11 of section II of the Workmen's Compensation act, *supra,* as amended by chapter 174 of the laws of 1913 (*Pamph. L., p.* 302; *R. S.* 1937, 34:15-12), that, in case of the death of the injured employe "from any cause other than the accident, during the period of payments for permanent injury, the remaining payments shall be paid" to his dependents as defined therein.

*Third:* Lastly, it is urged that the widow's petition for compensation on behalf of the deceased employe's dependents was not filed within the time prescribed by the cited provisions of the statute, and the bureau was therefore without jurisdiction in the premises.

Once more the point is made that the statutory period of limitation began to run from the date of the last lump sum payment, May 31st, 1934. It is said that the widow "cannot question or dispute the judgment entered in May, 1934, and the payment of compensation made in accordance with that judgment, nor can she dispute the dismissal of the petition which her husband filed thereafter on May 5th, 1936." This argument is likewise without merit.

The petition was also filed within two years after the last payment of compensation in the statutory sense, and was therefore within time. *Lusczy* v. *Seaboard By-Products Co.,* 101 *N. J. L.* 170; *Hercules Powder Co.* v. *Nieratko, supra; Lazzio* v. *Primo Silk Co.,* 114 *Id.* 450; *Dover Boiler Works* v. *Paynter,* 14 *N. J. Mis. R.* 759; *affirmed,* 118 *N. J. L.* 183. We have already dealt with this question, and there is no occasion to add to what we have said respecting it. There is no

contention that this petition was not filed within the allotted time, if the applicable rule is that applied to the subject-matter of subdivison (A) of the first point.

The writs are accordingly dismissed, with costs.