215 N.J. Super. 552 (1987)
522 A.2d 479
ERWIN H. ZOLLER, PLAINTIFF-APPELLANT,
v.
TRANSAMERICA INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND THE ADLER AGENCY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1987.
Decided March 9, 1987.
*554 Before Judges KING, DEIGHAN and HAVEY.
Richard H. Thiele argued the cause for appellant (Thiele & Hermes, attorneys; Richard H. Thiele on the brief and reply brief).
Joseph E. Kelley argued the cause for respondent (Haggerty & Donohue, attorneys, Robert J. Reilly, III on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
The sole issue raised by this appeal is whether an insured is entitled to recover income continuation benefits under his no-fault automobile insurance policy and N.J.S.A. 39:6A-4b when an automobile-related injury, combined with the availability of early retirement benefits, motivates him to retire, resulting in a loss of income. We conclude that an insured is not entitled to benefits unless there is objective, medical proof that the insured's termination of employment was because of bodily injury rendering him incapable of carrying out his work-related duties. While the pain and discomfort suffered by plaintiff here was a substantial factor in motivating him to take early retirement, he was able to resume his employment after the automobile accident and to carry out his job tasks. Consequently, he was not entitled to income continuation benefits. We therefore affirm.
Plaintiff, an airline mechanic, was injured in an automobile accident unrelated to his employment in 1982 at age 61, while covered by a no-fault automobile insurance policy issued by defendant Transamerica Insurance Company. His policy provided first-party coverage for minimum income continuation benefits of $100 per week to a limit of $5,200 in accordance with N.J.S.A. 39:6A-4. He also was provided "Option 4" benefits of *555 $200 per week to a limit of $26,000 as provided under N.J.S.A. 39:6A-10.
Plaintiff was out of work for one month as a result of the accident. After returning to work for approximately 15 months, he decided to take early retirement which became available to him at age 62. Upon retirement plaintiff made a claim for income continuation benefits for the income loss he suffered as a result of his "forced retirement." Prior to retirement he earned approximately $36,000 per year. Under the early retirement program, he receives $9,000 per year in pension benefits. Defendant Transamerica denied the claim and plaintiff instituted this declaratory action in the Law Division.[1]
At the bench trial plaintiff testified that he worked at United Airlines for nearly 30 years prior to the automobile accident. His duties as a mechanic included the repair of component parts to airplanes, including engines, brakes, tires and appliances. The work entailed "... a lot of twisting, yanking and buggy-lugging."
As a result of the accident plaintiff suffered injuries to the lower back and cervical spine. He was treated conservatively and was prescribed medication. When he returned to work after the accident, plaintiff had difficulty performing his work-related tasks. Strenuous work caused pain and discomfort. His co-employees helped him with the heavier work. Plaintiff stated that this concerned him since "I just like to carry my own weight" and "I felt like an also-ran."
Plaintiff decided to take early retirement after discussing the matter with his wife. The most significant factor in his decision was the difficulty he had in performing the job. He stated *556 that "[i]t would have been definitely more appropriate for me to continue until I was 65 financially and otherwise, but if you're miserable on the job and you're hurting when you're doing it, why prolong it?" Plaintiff conceded that a prime factor in his decision was the availability of retirement benefits at 62, but stressed that the governing factor was his health.
Dr. Max Novich, a physician specializing in orthopedics, testified on plaintiff's behalf. He stated that plaintiff had sustained a cervical spine sprain, a strain of the paracervical and shoulder ridge muscles with myosytis superimposed with aggravation of a pre-existing degenerative changes in L3-L4, L4-L5, and L5-S1. Dr. Novich told plaintiff to "... lay off, do the best he could, but don't consider an operation" because of plaintiff's age. Dr. Novich was of the view that plaintiff's injury and disability were permanent in nature and that plaintiff's work as a mechanic "... with that kind of a disability has to lead to pain, more pain, increased pain." When Dr. Novich was asked on cross-examination whether he advised plaintiff not to go back to work, or whether plaintiff should take early retirement because of the injury, Dr. Novich responded "[plaintiff] didn't ask me, so I didn't discuss it."
The Law Division judge found that the paramount factor in motivating plaintiff to take early retirement was the disability and pain suffered from his automobile accident. However, the judge denied benefits, concluding that:
[T]he loss of income occasioned by the difference between his pay ... and his retirement was [not] the result of the injuries, but rather it was the result of his retirement since the plaintiff did, in fact, work for some 15 months after the injuries were sustained.
On appeal plaintiff argues that the focus should not be on whether he was disabled from working as a result of his injuries. He argues that N.J.S.A. 39:6A-4, the personal injury protection (PIP) statute, is keyed to the extent of loss of income, not disability. He contends that since his injury and consequent pain in the performance of his job tasks were the most significant factors in his decision to retire, he is entitled to *557 income continuation benefits, even if he was physically able to continue working. We disagree.
N.J.S.A. 39:6A-4 requires every automobile liability insurance policy to provide personal injury protection coverage. The coverage includes income continuation benefits representing:
The payment of the loss of income of an income producer as a result of bodily injury disability, subject to the maximum weekly payment of $100. [N.J.S.A. 39:6A-4b].
N.J.S.A. 39:6A:10 provides that benefits in excess of those provided for in N.J.S.A. 39:6A-4b must be provided as an option to persons for disabilities, as long as the disability persists, up to an income level of $35,000 per year. There is no definition of "disability" in the PIP statute.
We construe the applicable provisions as intending to provide income continuation benefits only to persons who are foreclosed from their normal, gainful employment because of bodily injuries sustained in an automobile accident. See Gambino v. Royal Globe Ins. Co., 86 N.J. 100, 109 (1981). No provision in the PIP statute suggests that benefits should be paid when the insured, capable of working without income loss, voluntarily terminates employment because of the injury, combined with other unrelated factors.
Our conclusion is supported by the statutory language itself. N.J.S.A. 39:6A-4b provides for payment of loss of income "... as a result of bodily injury disability...." N.J.S.A. 39:6A-10 allows for additional benefits for disabilities "... as long as the disability persists...." Both provisions link the income loss to the physical disability. This is in keeping with the recommendation of the Automobile Insurance Study Commission (whose findings were encompassed in the PIP statute), that income benefits be in the nature of "... [d]isability benefits for loss of income due to inability to work caused by such injury...." Automobile Insurance Study Commission, Reparation Reform for New Jersey Motorists at 59 (Dec. 1971) [emphasis supplied].
*558 An objective of the PIP statute was to provide "... appreciable reparation for all New Jersey accident victims promptly, fairly and efficiently." Study Commission, supra at xii; see also Gambino v. Royal Globe Ins. Co., supra, 86 N.J. at 105-106. Our interpretation of the applicable income continuation benefit provisions harmonizes with the design of other legislation intending to provide prompt payment of "disability" benefits for involuntary unemployment caused by injury. For example, the Temporary Disability Benefits Law, N.J.S.A. 43:21-25, et seq., defines "compensable disability" as "... the individual's total inability to perform the duties of employment ..." when he or she suffers from an accident unrelated to work. N.J.S.A. 43:21-29 [emphasis supplied]. "Temporary disability" benefits under the Workers' Compensation Act are payable from the day the employee is first unable to work by reason of the accident, until the employee "... is able to resume work and continue permanently thereat...." N.J.S.A. 34:15-38. In both instances, the predicate finding to the payment of benefits is the inability to work because of an accident-related incapacity.
We are satisfied that the Legislature intended that the same "disability" benefit test should apply here. Our conclusion is reinforced by N.J.S.A. 39:6A-6, which provides that benefits collectible under workers' compensation insurance and temporary disability benefit statutes shall be deducted from the income continuation benefits collectible under N.J.S.A. 39:6A-4b. N.J.S.A. 39:6A-6 also permits the insurer to apply to the provider of the workers' compensation or temporary disability benefits for reimbursement if the insured fails to do so. By allowing reimbursement to the PIP insurer, the Legislature intended that the insured would not receive double recovery for the same loss. See Study Commission, supra at 51. If double recovery is to be prevented, the Legislature must have contemplated that the same test for "disability" should apply.
*559 Thus, where there is a total suspension or termination of employment after an automobile accident, the insured will be eligible for income continuation benefits only if the injuries sustained prevent the insured from performing his or her work-related duties. There may be instances under the PIP statute where the insured suffers a partial disability and continues to work, but has a loss of income. In that circumstance, the measure of income loss is the difference between what the insured would have earned had injury not occurred and what he or she did earn. See Greenberg v. Great American Insurance Co., 158 N.J. Super. 223, 228 (App.Div. 1978), aff'd o.b. 79 N.J. 399 (1979). However, the insured still must demonstrate that the lost income was due solely to bodily injury incapacity. Such a circumstance, of course, is not present here, where plaintiff has completely terminated his employment and taken early retirement benefits.
Once the insured resumes employment at an earning level he would have enjoyed but for the accident, he is no longer entitled to benefits, even if resumption of his work-related duties causes pain and discomfort which ultimately induces the insured to leave his job voluntarily. This is so because the termination of employment is by voluntary choice rather than a medically demonstrated incapacity to work. As our Supreme Court in Gambino v. Royal Globe Ins. Co., supra, stated:
[T]hose individuals who, either by choice or disability unrelated to the accident, would not have desired or been capable of employment even if they had not been injured, may not recover. The completely retired, the unemployable and those who have never been or planned to be part of the workforce or have permanently removed themselves from the ranks of the gainfully employed are excluded from [income continuation] coverage. [86 N.J. at 110; emphasis supplied].
Physical incapacity and inability to perform the job tasks must be demonstrated by competent medical evidence. Mario Iavicoli, Esq., in his text, No Fault & Comparative Negligence in New Jersey (1973) states the proposition as follows:
The lost income must occur as a result of a bodily injury disability sustained in an automobile accident. The claimant, therefore, is compelled to substantiate *560 that the lost employment was due to the personal injury disability. The claimant's physician would be required to render an opinion that the personal injury disability necessitated the amount of lost employment in question. [Id. at 48].
Here, it is clear from the proofs that plaintiff's loss of income attributable to his early retirement is not as a "... result of bodily injury disability...." N.J.S.A. 39:6A-4b. There is no medically established physical impairment that prevented plaintiff from carrying out his work-related duties at United Airlines. While Dr. Novich testified that plaintiff's lumbosacral injury was permanent, he offered no opinion that the injury was sufficiently debilitating to compel plaintiff's retirement. Indeed, plaintiff returned to work one month after the automobile accident and continued working until early retirement became available to him. The record suggests that plaintiff would have continued to work until age 65, albeit with discomfort, but for the availability of the early retirement benefits. Plaintiff simply chose not to continue working with the pain when the benefits became available to him. While we do not question plaintiff's motivation in accepting early retirement, we cannot conclude that the resulting loss of income may be deemed attributable to a "bodily injury disability".
Our result is entirely consistent with the PIP statute's objective of reducing or stabilizing insurance premiums. Study Commission, supra, at 7; Gambino v. Royal Globe Ins. Co., supra, 86 N.J. at 105. Permitting income continuation benefits to an insured who is capable of working but who retires, primarily because of the pain and discomfort he suffers from an accident, would obviously increase the number of claims. Moreover, the choice to retire from the work force may be predicated on many factors unrelated to the injury. To permit benefits, when the injury is only one factor in the choice to retire, establishes a subjective test, the application of which may lead to arbitrary and inconsistent results.
Affirmed.
NOTES
[1] The second and third counts of plaintiff's complaint against Transamerica and defendant Adler Agency seeking reformation of the insurance policy to compel uninsured motorist coverage were voluntarily dismissed without prejudice.