920 A.2d 761

STEVEN PORTNOFF, PLAINTIFF–RESPONDENT/CROSS–APPEL-LANT, v. NEW JERSEY MANUFACTURERS INSURANCE COM-PANY, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 2006—Decided April 25, 2007.

Before Judges SKILLMAN, LISA and HOLSTON, JR.

*Stephen J. Foley, Jr.*, argued the cause for appellant/cross-respondent (*Campbell, Foley, Lee, Murphy & Cernigliaro*, attorneys; *Richard D. Forest*, on the brief).

*Richard Galex* argued the cause for respondent/cross-appellant (*Galex Wolf*, attorneys; *Mr. Galex*, on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

This appeal requires our determination of whether the collateral source rule, *N.J.S.A.* 39:6A–6, in the Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1.1 to –35, authorizes a setoff against income continuation benefits, *see N.J.S.A.* 39:6A–4b, for workers' compensation total permanent disability benefits, *see N.J.S.A.* 34:15–12b. The trial judge found no right to the setoff and granted summary judgment in plaintiff's favor against his auto insurance carrier, New Jersey Manufacturers Insurance Company (NJM). We disagree and reverse.

The facts are undisputed. While in the course of his employment, plaintiff, an attorney earning more than $1,400 per week, was injured in an automobile accident. Plaintiff's injuries caused him to be totally and permanently disabled, and have prevented him from working since the accident. Plaintiff maintained an automobile insurance policy with NJM at the time of the accident. The policy provided for additional personal injury protection (PIP) benefits, *see N.J.S.A.* 39:6A–10, including income continuation

benefits of $700 per week for unlimited weeks. Plaintiff initiated a workers' compensation action. He was awarded twenty-six weeks of temporary disability benefits at the rate of $568 per week, and, because he was found totally and permanently disabled, he was awarded 450 weeks of total permanent disability benefits at the rate of $568 per week, commencing immediately upon conclusion of the twenty-six week temporary disability award.[1]

Plaintiff was receiving his workers' compensation benefits. However, NJM refused to pay any income continuation benefits, prompting plaintiff's filing of this suit to collect those benefits. The parties filed cross-motions for summary judgment. Plaintiff demanded payment of the $700 per week benefit from the time of the accident.

Plaintiff conceded that NJM was entitled to a setoff of $568 per week for the twenty-six weeks he received temporary disability compensation benefits. Plaintiff thus acknowledged that the two benefits represented compensation for the same loss, namely current wage loss, triggering the applicability of the collateral source rule with respect to temporary disability compensation benefits. The judge agreed and allowed the setoff, ordering NJM to pay plaintiff $132 per week for the first twenty-six weeks following the accident, plus interest.

With respect to plaintiff's total permanent disability compensation award, however, the judge agreed with plaintiff and found no right to a setoff. The judge relied on our statement in *Olivero v. New Jersey Manufacturers Insurance Company*, 227 *N.J.Super.* 367, 381, 547 *A.*2d 710 (App.Div.1988), *certif. denied*, 115 *N.J.* 76,

---

[1] Because plaintiff had prior injuries, his permanent disability award is being paid by the Second Injury Fund. *See N.J.S.A.* 34:15–95. That circumstance does not affect our analysis because the permanent disability award, whether paid by the Second Injury Fund or not, remains a source of payment "collectible under workers' compensation insurance" for the purposes of the collateral source rule. *N.J.S.A.* 39:6A–6; *see also Rosales v. State of N.J. Dep't. of the Judiciary*, 373 *N.J.Super.* 29, 860 *A.*2d 929 (App.Div.2004), *certif. denied*, 182 *N.J.* 630, 868 *A.*2d 1033 (2005); *Wright v. Port Auth. of N.Y. and N.J.*, 263 *N.J.Super.* 6, 621 *A.*2d 941 (App.Div.), *certif. denied*, 133 *N.J.* 442, 627 *A.*2d 1147 (1993).

556 *A*.2d 1219 (1989), that "[t]here is no doubt that an award for permanent disability under the Workers' Compensation Act represents compensation for the employee's physical impairment to carry on the ordinary pursuits of life and not loss of income[.]" The panel cited as authority for that proposition *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 111, 469 *A*.2d 22 (1984). *Ibid.* As we will discuss, the cited proposition traces its lineage to cases dealing with partial, not total, permanent compensation disability benefits. Applying that principle in this case, the judge reasoned that the collateral source rule did not apply because "income continuation benefits versus an award of permanent disability are two separate[,] discrete and disparate remedies."

The judge ordered NJM to pay the full $700 per week beginning with the twenty-seventh week after the accident. He ordered NJM to pay the accrued income continuation benefits with interest, and to continue paying plaintiff $700 per week without setoff for workers' compensation benefits until the parties otherwise agreed or the court otherwise ordered. The judge also awarded counsel fees to plaintiff's attorney.

NJM appeals, arguing that the total permanent disability compensation benefits plaintiff is receiving are coextensive with income continuation benefits, and the trial judge erred in refusing to apply the collateral source rule and grant NJM a setoff.[2] We agree with NJM.

Basic income continuation benefits under PIP are defined as follows:

---

[2] Plaintiff has filed a cross-appeal, arguing that NJM has paid him no income continuation benefits and, regardless of the outcome of the appeal, NJM should have been paying the undisputed $132 per week to plaintiff for the entire time since the accident, and on a continuing basis. The trial court's order stayed payments upon the posting by NJM of a bond. Although we agree with plaintiff's argument, a party seeking relief from a stay should do so by motion. *R.* 2:9–5(b). Plaintiff has not done so. Upon the filing of this opinion, the trial court's stay is dissolved, thus rendering the issue raised in the cross-appeal moot. Accordingly, we will not address it further.

The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100. Such sum shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200, on account of injury to any one person in any one accident, except that in no case shall income continuation benefits exceed the net income normally earned during the period in which the benefits are payable.

[*N.J.S.A.* 39:6A–4b.]

Insurers are required to make available optional PIP coverage with greater than the basic coverage. *N.J.S.A.* 39:6A–10. Optional income continuation benefits under this section shall be provided, within the limits of coverage, "as long as the disability persists." *Ibid.* Plaintiff exercised this option and contracted with NJM for income continuation benefits of $700 per week for unlimited weeks.

The collateral source rule in AICRA [3] provides, in relevant part:

The benefits provided in [*N.J.S.A.* 39:6A–4 and –10] ... shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits, collectible under workers' compensation insurance, employees' temporary disability benefit statutes, Medicare provided under federal law, and benefits, in fact collected, that are provided under federal law to active and retired military personnel shall be deducted from the benefits collectible under [*N.J.S.A.* 39:6A–4 and –10]. ...

[*N.J.S.A.* 39:6A–6.]

The collateral source rule places the primary obligation to pay benefits covered by both workers' compensation and PIP on the employer rather than the PIP insurer and reflects a legislative policy determination that losses resulting from work-related automobile accidents should be borne by the "ultimate consumers of the goods and services in whose production they are incurred" as opposed to "the automobile-owning public" in general. *Lefkin v. Venturini,* 229 *N.J.Super.* 1, 12, 550 *A.*2d 985 (App.Div.1988); *see also Chubb Group ex rel. Conrad v. Trenton Bd. of Educ.,* 304 *N.J.Super.* 10, 18–19, 697 *A.*2d 952 (App.Div.), *certif. denied,* 152

---

[3] The applicable substantive provisions of *N.J.S.A.* 39:6A–6 have remained unchanged from the initial enactment of the New Jersey Automobile Reparation Reform Act (commonly referred to as the No Fault Act) in 1972. *See L.* 1972, *c.* 70, § 6.

*N.J.* 188, 704 *A.*2d 18 (1997) (upholding auto insurer's right to seek reimbursement in workers' compensation division for PIP benefits paid).

■ The purpose of the collateral source rule is to "prevent double recovery of benefits by accidental victims of personal injury to the extent that these benefits were mandated otherwise by law" and to advance the legislative goal of reducing automobile insurance premiums. *O'Boyle v. Prudential Ins. Co. of Am.*, 241 *N.J.Super.* 503, 507–08, 575 *A.*2d 515 (App.Div.1990). A double recovery presupposes congruence of the two benefits implicated. *See Skryha v. Pa. Nat'l Mut. Cas. Ins. Co.*, 206 *N.J.Super.* 66, 70–71, 501 *A.*2d 1021 (App.Div.1985) (holding that, because the Workers' Compensation Law makes no provision for compensating a surviving dependent for the loss of services the decedent rendered to his family during his lifetime, the collateral source rule did not bar recovery by the survivor of PIP essential services benefits). Resolution of the issue before us therefore requires a comparison of income continuation benefits and total permanent disability compensation benefits.

■ An indispensable predicate to entitlement to income continuation benefits is a "disability" caused by the accident. *Zoller v. Transamerica Ins. Co.*, 215 *N.J.Super.* 552, 559–60, 522 *A.*2d 479 (App.Div.), *certif. denied*, 108 *N.J.* 214, 528 *A.*2d 33 (1987). In *Zoller*, we analogized income continuation benefits to employees' temporary disability benefits, payable due to an individual's "total inability to perform the duties of employment" as a result of an accident unrelated to work, *see N.J.S.A.* 43:21–29, and to temporary disability compensation benefits, payable from the day the employee is first unable to work by reason of a work-related accident until the employee "is able to resume work and continue permanently thereat," *see N.J.S.A.* 34:15–38. *Id.* at 558, 522 *A.*2d 479 (emphasis deleted). We noted that with both of those benefits entitlement rested upon a showing of "inability to work because of an accident-related incapacity." *Ibid.* We concluded that the same disability benefit test should apply to income continuation benefits,

*ibid.,* and because *N.J.S.A.* 39:6A–4 and –10 link income loss to physical disability, income continuation benefits are "in the nature of '. . . [d]isability benefits for loss of income *due to inability to work* caused by such injury. . . .' " *Id.* at 557, 522 *A.*2d 479 (quoting Automobile Insurance Study Commission, Reparation Reform for New Jersey Motorists, at 59 (Dec.1971)). Consistent with this reasoning, an injured individual who is capable of returning to work, even if it would cause "pain and discomfort," but who chooses not to, is disqualified from receiving income continuation benefits. *Id.* at 559–60, 522 *A.*2d 479.

■ As we have stated, plaintiff does not dispute NJM's entitlement to a setoff against PIP benefits for the temporary disability compensation benefits he received for twenty-six weeks. Those compensation benefits are payable to an injured worker "during the period of such disability," to a maximum of 400 weeks. *N.J.S.A.* 34:15–12a. "The purpose of temporary disability [compensation] benefits is to provide . . . a 'partial substitute for loss of current wages.' " *Cunningham v. Atl. States Cast Iron Pipe Co.,* 386 *N.J.Super.* 423, 428, 901 *A.*2d 956 (App.Div.), *certif. denied,* 188 *N.J.* 492, 909 *A.*2d 726 (2006) (quoting *Ort v. Taylor–Wharton Co.,* 47 *N.J.* 198, 208, 219 *A.*2d 866 (1966)). There is no dispute as to the congruence of the two benefits, and a setoff is required to prevent plaintiff from receiving a prohibited double recovery for the same loss.

NJM argues that the same congruence exists between income continuation benefits and total permanent disability compensation benefits. Plaintiff contends that permanent disability benefits in workers' compensation represent indemnity for physical impairment and are not intended to provide wage loss replacement due to a compensable injury. In our view, that description of the nature and purpose of permanent disability compensation benefits reflects a recognition of a permissible component of partial permanent disability, but is not a determinative aspect of total permanent disability within the boundaries of our analysis. Therefore, we do not agree with plaintiff's description of the nature and

purpose of the total permanent disability compensation benefits he is receiving.

Historically, statutory and decisional law in New Jersey have recognized physical impairment, without regard to immediate loss of earning capacity, as a permissible element in determining whether a claimant has suffered partial permanent disability. Seventy years ago, analyzing the statutory provision then applicable to partial permanent disability with reference to a worker who suffered facial disfigurement by contact with acid while at work, our State's highest court said:

> Although the compensation afforded by the statute is based upon and is measured by the workman's earnings, the test of liability is not the immediate impairment of earning power; it is rather the loss ensuing from personal injury which detracts from the "former efficiency" of the workman's "body or its members in the ordinary pursuits of life." The benefits conferred by this particular provision have been classified by this court as in the nature of an indemnity for personal injury sustained, rather than for the mere loss of earning power. But, however this may be, the compensation is measured by the impairment of earning capacity, immediate or in the future. That is the essence of the statute. Whether the statutory compensation be placed in the one category or the other, the determinative is not the immediate loss of earning power.
>
> [*Everhart v. Newark Cleaning & Dyeing Co.*, 119 *N.J.L.* 108, 111–12, 194 *A.* 294 (E. & A.1937) (citations omitted).]

Among the authorities relied upon by the Court in *Everhart* was *Burbage v. Lee*, 87 *N.J.L.* 36, 93 *A.* 859 (Sup.Ct.1915), decided just four years after the initial enactment of New Jersey's Workers' Compensation Act, *see L.* 1911, *c.* 95. *Id.* at 112, 194 *A.* 294. The injured worker in *Burbage, supra,* 87 *N.J.L.* at 37, 93 *A.* 859, was able to resume work with no reduction in wages after a temporary period of disability. The court determined that with respect to partial permanent disability, "the term 'disability' is not restricted to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life." *Id.* at 38, 93 *A.* 859.

In 1984, our Supreme Court had its first opportunity to interpret a 1980 amendment to the Workers' Compensation Act that changed the definition of partial permanent disability. *Perez,*

*supra,* 95 *N.J.* at 105, 469 *A.*2d 22. The revised definition is as follows:

> "Disability permanent in quality and partial in character" means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's working ability. Subject to the above provisions, nothing in this definition shall be construed to preclude benefits to a worker who returns to work following a compensable accident even if there be no reduction in earnings. Injuries such as minor lacerations, minor contusions, minor sprains, and scars which do not constitute significant permanent disfigurement, and occupational disease of a minor nature such as mild dermatitis and mild bronchitis shall not constitute permanent disability within the meaning of this definition.
> [*N.J.S.A.* 34:15–36.]

The Court concluded that the revised definition expressly contemplates consideration of other factors besides a material lessening of working ability because it refers to "a material lessening as only one criterion 'included in the criteria' to be considered." *Perez, supra,* 95 *N.J.* at 117, 469 *A.*2d 22. Thus, the Court noted that the revised definition "cautions that a return to work at the same wages need not preclude compensability." *Ibid.* Then, citing *Everhart* and *Burbage,* the Court concluded that "[t]his concept is an endorsement of the well-established principle in New Jersey compensation law that impairment of earnings or earning capacity is not a necessary prerequisite to a finding of *partial* permanent disability." *Ibid.* (Emphasis added).

In contrast, total permanent disability in workers' compensation "means a physical or neuropsychiatric total permanent impairment caused by a compensable accident or compensable occupational disease, where no fundamental or marked improvement in such condition can be reasonably expected." *N.J.S.A.* 34:15–36. More particularly, "[t]otal permanent disability is found if the workman after the causative accident or employment exposure is rendered unemployable in a reasonably stable job market—and this notwithstanding that factors personal to the individual play a contributory part in such unemployability." *Katz v. Twp. of Howell,* 67 *N.J.* 51, 62, 335 *A.*2d 14 (1975).

■ Therefore, unlike partial permanent disability, a necessary prerequisite for total permanent disability is the inability to work because of the compensable injury or illness. Indeed, typically partially permanent disabled workers return to work. In such cases, there would be no issue of setoff because income continuation benefits would not be payable upon a return to work.

■ The criteria for establishing the existence of the disability required to qualify for income continuation benefits and to qualify for total permanent disability compensation benefits are the same. The basis for computation of the benefits and the manner of payment are also similar. Each is based upon the worker's weekly wages and cannot exceed the amount of those wages. Each is payable as the loss accrues on a weekly basis and as long as the disability persists, subject to the limits of coverage in the case of income continuation benefits. In plaintiff's case, under his optional PIP coverage, there is no outer limit on the number of weeks his income continuation benefits are payable. Likewise, the total permanent disability compensation benefits, although initially payable for 450 weeks, may be extended further if the disability continues. *N.J.S.A.* 34:15–12b.

■ Reflecting the legislative "intention ... that compensation payments are in lieu of wages," the benefits are ordinarily required to be paid in weekly installments, and only in extraordinary cases, with the approval of the workers' compensation court, may the benefits be commuted to a lump sum payment. *N.J.S.A.* 34:15–25. Indeed, the workers' compensation regulations provide that "[n]o award for total disability or dependency benefits shall be commuted." *N.J.A.C.* 12:235–6.3(d). *But see Harrison v. A & J Friedman Supply Co.*, 372 *N.J.Super.* 326, 858 *A.*2d 567 (App.Div. 2004) (declaring invalid that provision with respect to dependency benefits). The reason why commutation is disfavored is plain: "The essence of the scheme of the Workmen's Compensation Act is 'to provide weekly compensation, in lieu of wages, to the injured employee during the period of his disability * * * commutation of the payments is out of the normal course. * * * '[.]" *Verra v. Mayor & Council of Hoboken,* 70 *N.J.Super.* 422, 426, 175 *A.*2d

665 (App.Div.1961) (quoting *King v. W. Elec. Co.*, 122 *N.J.L.* 442, 5 *A.*2d 490 (Sup.Ct.1939), *aff'd*, 124 *N.J.L.* 129, 11 *A.*2d 32 (E. & A.1940)).

We set forth in *Verra* the general purpose of provisions prohibiting or discouraging commutation to lump sum payments in various jurisdictions:

"It has been the declared purpose of compensation that it should be paid in lieu of wages and that it shall be as wages, that is periodically. Any deviation from this method of payment has been said to be contrary to the declared purpose of the acts and must be done only as provided by law. 'It is a matter of common knowledge that one paid a large sum of money in a lump sum instead of small periodical payments is more prone to dissipate it, and the probability that the money would be expended in the manner intended, is small, if nonexistent.'

\* \* \* 'The purpose of periodical payments is to give the employee an income payable as his wages were paid and to preclude any possibility of an imprudent employee or dependent wasting the means provided for his support and thereby becoming a charge upon society.' \* \* \* 'The whole idea of periodical payments is to give the workman an income payable as his wages are paid \* \* \* this is the plan of the act, and it is only in exceptional cases that the court should approve a commutation.' "

[*Id.* at 427, 175 *A.*2d 665 (quoting *Schneider, Workmen's Compensation,* vol. 8, § 1790, at 351–53).]

The leading commentator on workers' compensation has expressed a similar view:

In some jurisdictions, the excessive and indiscriminate use of the lump-summing device has reached a point at which it threatens to undermine the real purposes of the compensation system. Since compensation is a segment of a total income insurance system, it ordinarily does its share of the job only if it can be depended on to supply periodic income benefits replacing a portion of lost earnings. If a partially or totally disabled worker gives up these reliable periodic payments in exchange for a large sum of cash immediately in hand, experience has shown that in many cases the lump sum is soon dissipated and the worker is right back where he or she would have been if workers' compensation had never existed.

[8 *Larson's Workers' Compensation Law,* § 132.07[1] at 132–17 (2006).]

In *Verra, supra,* we also explained why an employer could not receive credit for an overpayment voluntarily made prior to adjudication for a lesser amount:

"In the case of disability, both temporary and permanent, the statute prescribes weekly payments of compensation at a fixed rate, *i.e.,* a certain percentage of the weekly wage. This is of the essence of the statutory scheme.

Compensation for 'all classes of injuries shall run consecutively, and not concurrently,' except as otherwise specifically provided. Such payments 'are in lieu of wages, and are to be received by the injured employee or his dependents in the

same manner in which wages are ordinarily paid'; * * * The parties are disabled from contracting out of the statute, so much so as to be deprived of the ordinary right of compromise of a disputed claim."
[70 *N.J.Super.* at 427–28, 175 *A.*2d 665 (quoting *DiMeglio v. Slonk Constr. Co.,* 121 *N.J.L.* 366, 370, 2 *A.*2d 470 (Sup.Ct.1938), *aff'd,* 122 *N.J.L.* 379, 5 *A.*2d 691 (E. & A.1939)) (citations omitted).]

Obviously, a worker who is permanently and totally disabled from performing his or her job has suffered a physical or psychiatric impairment, and it is reasonable to infer that the impairment adversely affects the individual's life pursuits unrelated to work. However, two individuals suffering the same injury and the same impairment of their ordinary life pursuits can receive substantially disparate weekly benefits, in proportion to their respective wages. Thus the primary focus of the benefit is wage-based, not impairment-based. This evinces a design geared more towards providing a partial replacement for wage loss during the period of disability than providing indemnity for the disability itself.

It is also significant that the weekly benefit formula is the same for total permanent disability compensation benefits and temporary disability compensation benefits, which are unquestionably a partial wage loss benefit. *See N.J.S.A.* 34:15–12a and b (seventy percent of weekly wages, subject to a statutory cap). Each benefit is payable for weeks the injured worker is unable to work because of the injury. This similarity further sways us towards the conclusion that the weekly benefit in either case is intended as a partial wage loss replacement for disability resulting from the work related injury or illness.

 Even if it can be said that total permanent disability compensation benefits contain some unspecified and unquantified component of indemnity for physical impairment, the overriding form, amount and purpose of the benefit is partial replacement of wages during the period of disability. *See also Young v. W. Elec. Co., Inc.,* 96 *N.J.* 220, 232, 475 *A.*2d 544 (1984) (holding that disability pension benefits could be offset against both temporary and total permanent disability compensation benefits). "The workers' compensation system is remedial social legislation aimed at providing income protection and medical services to workers

injured in the workplace. It provides benefits, although somewhat less than the full loss, for work-related injuries regardless of fault." *Wright v. Port Auth. of N.Y. and N.J.*, 263 *N.J.Super.* 6, 14–15, 621 *A.*2d 941 (App.Div.), *certif. denied*, 133 *N.J.* 442, 627 *A.*2d 1147 (1993) (internal citation omitted).

Because of the strong similarities in the nature of the qualifying disability, the basis for calculation and limitation of the amount of benefits, the payment method and duration, and the purpose of income continuation benefits and total permanent disability compensation benefits, we conclude that the benefits are congruent with each other. Therefore, to allow plaintiff to collect both benefits without a setoff would allow a double recovery for the same loss in violation of the collateral source rule.

To the extent that *Olivero* can be read as reaching a contrary conclusion with respect to the right of a PIP setoff against income continuation benefits for total permanent disability compensation benefits, we believe that the panel incorrectly relied upon the *Perez* analysis, which is applicable to partial permanent awards.

Reversed.