# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TYLER AINSWORTH,

        Respondent,

        v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, a foreign
insurance company,

        Appellant.

NO. 69433-2-I

DIVISION ONE

ORDER GRANTING MOTION
TO PUBLISH

Respondent Tyler Ainsworth moved on February 14, 2014, to publish the court's

February 10, 2014 opinion. The appellant, Progressive Casualty Insurance Company

has filed a response opposing said publication. The court has determined that the

motion should be granted. Therefore, it is

ORDERED that respondent's motion to publish opinion is granted.

DATED this 14th day of March 2014.

FOR THE PANEL:

_____

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2014 MAR 14 AM 7: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TYLER AINSWORTH,        )    NO. 69433-2-I
                                  )
         Respondent,     )    DIVISION ONE
                                  )
            v.               )
                                  )
PROGRESSIVE CASUALTY      )    .PUBLISHED OPINION
INSURANCE COMPANY, a foreign   )
insurance company,          )    FILED: February 10, 2014
                                  )
           Appellant.        )

LAU, J. — Progressive Casualty Insurance Company appeals the order granting partial summary judgment in Tyler Ainsworth's favor on his income continuation (wage loss) benefit claim under applicable provisions of his automobile insurance policy.[1] We hold that (1) the plain meaning of the relevant policy provisions entitles Ainsworth to income continuation benefits under the circumstances here, (2) Progressive unreasonably denied coverage and payment of benefits under the Insurance Fair Conduct Act (IFCA), RCW 48.30.015, (3) no material fact issues exist, and (4)

---

[1] Progressive filed its notice of appeal from a partial summary judgment order that resolved Ainsworth's claims for breach of contract and violation of the Insurance Fair Conduct Act. At the time, additional claims for violation of the Washington Consumer Protection Act (CPA), insurance bad faith, and negligence remained pending before the trial court. We stayed appellate proceedings pending entry of CR 54(b) findings certifying the partial summary judgment order for immediate appeal. The trial court entered an order directing entry of a final judgment on the partial summary judgment order and declaring Ainsworth's CPA, bad faith, and negligence claims moot. We lifted the stay and now review the merits of the summary judgment order.

Progressive failed to preserve its "actual damages" claim. Accordingly, we affirm the partial summary judgment order and the trial court's award of attorney fees and costs.

## FACTS

On July 14, 2010, Tyler Ainsworth suffered neck and back injuries on Interstate 5 in Seattle when an "18 wheeler" tractor trailer truck traveling 50 to 55 miles per hour rear-ended the car he was driving.[2] Shortly after the accident, he submitted a claim for income continuation (wage loss) benefits to Progressive. He claimed he lost income from his warehouse job at Contour Inc.,[3] and from his part-time evening delivery job at Pagliacci Pizza Inc., due to his accident-related bodily injuries.

Progressive's claim representative, Michelle Becerra, calculated the amount of wage loss benefits.[4] Becerra did not include Ainsworth's lost Pagliacci wages in her wage loss calculation. Progressive paid Ainsworth's wage loss benefits based solely on lost Contour wages.

Becerra obtained medical updates from Ainsworth's primary care physician, Dr. Christopher Smith. In a letter dated September 21, 2010, Dr. Smith stated that Ainsworth was "making excellent progress" and indicated that he could resume full-time work, "[w]ith [r]estrictions," on October 15, 2010. Dr. Smith specified, "Current restrictions are lifting no more than 50 pounds. Rarely more than 25 pounds. [Ainsworth] will need more frequent rest breaks. Ten minutes per hour." He also noted

---

[2] Progressive adjusted Ainsworth's property loss claim and determined that the vehicle was a total loss due to the damages.

[3] At the time Ainsworth submitted his claim, Contour was known as "Twenty20 Inc." We refer to Twenty20, Inc. as "Contour."

[4] The policy pays no wages lost for the first 14 days after the accident and caps at 54 weeks from the accident.

that the restrictions would remain in effect pending a "follow-up visit in 3 to 4 weeks."

Finally, he indicated that he had "not yet determined" the date on which Ainsworth

would regain the ability to work without restrictions.

On September 27, 2010, Becerra noted in Progressive's claim log that she "rcvd

[sic] clarification from Dr. Smith re: Tyler wage loss." (Formatting omitted). Her note

continued, "As of 10/15/10 [Ainsworth] can increase to 8 hrs day." (Formatting omitted.)

Progressive stopped paying Contour wage loss benefits on October 14, 2010.

The next day, Ainsworth returned to work at Contour as a full-time, hourly employee.

He later claimed 60 hours of work missed in October and November 2010 due to

medical appointments with various health care providers for injury-related treatment.

On December 7, 2010, Ainsworth requested additional wage loss benefits for the

Contour wages he lost while attending these medical appointments. Progressive

denied the claim. It concluded that Ainsworth's contractual entitlement to wage loss

benefits ended on October 15, 2010, the date Dr. Smith released him to resume

restricted full-time work. In a letter dated December 29, 2010, Becerra denied

additional benefits, explaining that Progressive's obligation to pay wage loss benefits

under the policy ended on "the date on which the insured person is reasonably able to

perform the duties of his or her usual occupation . . . ." She stated, "We have not

received anything to date that Mr. Ainsworth is not able to perform the duties of his

usual occupation. Therefore, additional wage loss is not owed."

Ainsworth sued Progressive, alleging breach of contract, a violation of IFCA

based on the failure to pay wage loss benefits due under the policy, and other claims

not relevant in this appeal. He then moved for partial summary judgment, arguing it was

-3-

undisputed that he lost Contour and Pagliacci wages due to accident-related bodily injuries. He calculated that Progressive owed him $5,458.18 in unpaid benefits— $736.12 for lost Contour wages and $4,722.06 for lost Pagliacci wages. He asked the court to award unpaid benefits as contract-based damages, along with attorney fees and costs. He also asked the court to enhance his award under IFCA's treble damages provision, RCW 48.30.015(2).[5]

Progressive responded, arguing that its duty to pay wage loss benefits for lost Contour wages terminated as a matter of law when Ainsworth resumed restricted full-time employment on October 15, 2010. It also argued, "With regard to Pagliacci, Plaintiff has never provided any note from a doctor restricting him from Pagliacci and has admitted that he never received a restriction relating to this employer." It then argued that no IFCA violation occurred, since the record contained no proof that it unreasonably denied Ainsworth's claim for wage loss.[6]

The trial court granted Ainsworth's partial summary judgment motion, ruling, "The uncontested medical evidence is that Plaintiff, the insured, was not 'reasonably able' to perform the duties in his two jobs due to the restrictions his doctor placed on him." It concluded that Ainsworth was entitled to $5,458.18 in unpaid income continuation benefits, covering both Contour and Pagliacci wage loss. Turning to the IFCA claim, it

_____

[5] RCW 48.30.015(2) provides, "The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages."

[6] Progressive's appellate briefing fundamentally misapprehends Ainsworth's wage loss claims. The partial summary judgment record is clear that Ainsworth sought Contour wage loss benefits related only to wages lost due to medical appointments in October 2010 and November 2010. As to Ainsworth's Pagliacci wage loss claim, he sought wage loss benefits for the period July 14, 2010, to August 2011.

-4-

found, "The Defendant unreasonably denied the 'income continuation benefits' without adequate investigation, erroneously concluding his return to some work justified the decision." Citing IFCA's treble damages provision, it stated, "Since the denial [of income continuation benefits] was not reasonable, the court DOUBLES the amount of actual damages under RCW 48.30.015(2) to $10,916.36." Finally, the court awarded Ainsworth attorney fees under IFCA and Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991). Progressive appeals.

## ANALYSIS

In this action to recover personal injury protection (PIP) wage loss benefits, Progressive contends that it properly paid wage loss benefits "throughout Ainsworth's convalescence" and stopped payments only when Ainsworth's doctor released him to work full-time on October 15, 2010. Br. of Appellant at 5. It relies on policy language that states benefits end when the insured is "reasonably able to perform the duties of his or her usual occupation." It also contends no benefits are payable for wage loss to attend medical appointments and Ainsworth failed to mitigate his damages. Ainsworth responds that Progressive raised no material issues of fact that he "remained medically restricted" from performing his usual job duties or failed to mitigate his damages. Resp't's Br. at 20.

### Summary Judgment

When reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. RAP 9.12; Harris v. Ski Park Farms, Inc., 120 Wn.2d 727, 737, 844 P.2d 1006 (1993). Summary judgment is appropriate only when, after reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party and all

questions of law de novo, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

An affidavit "'does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion.'" Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 954, 247 P.3d 18 (2011) (quoting Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002)). "Likewise, ultimate facts, conclusions of fact, conclusory statements of fact or legal conclusions are insufficient to raise a question of fact." Rugg, 115 Wn. App. at 224. A party opposing a motion for summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or its affidavits considered at face value. Rather, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. Herman v. Safeco Ins. Co. of Am., 104 Wn. App. 783, 787-88, 17 P.3d 631 (2001).

Coverage

"The courts liberally construe insurance policies to provide coverage wherever possible." Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694, 186 P.3d 1188 (2008). Construction of an insurance policy is a question of law. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 65, 882 P.2d 703 (1994). We examine the policy "to determine whether under the plain meaning of the contract there is coverage." Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998). "Terms undefined by the insurance contract should be given their ordinary

and common meaning, not their technical, legal meaning." Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). Terms in an insurance policy "must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser." Mid-Century Ins. Co. v. Henault, 128 Wn.2d 207, 213, 905 P.2d 379 (1995). We interpret an insurance contract from the point of view of the average person purchasing insurance. Holden v. Farmers Ins. Co. of Wash., 169 Wn.2d 750, 756, 239 P.3d 344 (2010).

"A determination of coverage involves two steps: first, '[t]he insured must show the loss falls within the scope of the policy's insured losses.'" Moeller v. Farmers Ins. Co. of Wash., 173 Wn.2d 264, 271-72, 267 P.3d 998 (2011) (alteration in original) (quoting McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 731, 837 P.2d 1000 (1992)). "Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" Moeller, 173 Wn.2d at 272 (quoting McDonald, 119 Wn.2d at 731)).

<u>Personal Injury Protection Coverage – Purpose</u>

The no-fault insurance system and personal injury protection (PIP) benefits are intended to provide victims of motor vehicle accidents adequate and prompt reparation for certain economic losses at the lowest cost to both the individual and the no-fault insurance system. The individual victim is benefited through quick compensation for economic losses incurred as a result of the accident, [irrespective] of fault and without having to bring a lawsuit.

12 STEVEN PLITT, DANIEL MALDONADO & JOSHUA D. ROGERS, COUCH ON INSURANCE 3D § 171:45, at 171-46 (2006) (footnote omitted).

Compensation for lost earnings or wages is generally one of the "basic economic losses" covered by no-fault and personal injury protection (PIP) insurance policies. This compensation for lost earnings or wages provides reimbursement for loss of earnings from work which the injured claimant would

have received had he or she not been injured and provides protection from economic hardship caused by the loss of a wage earner's income.

12 PLITT, ET AL, supra, § 171:53, at 171-54 to -55 (footnote omitted); see also 5B

MATTHEW KING, WASHINGTON INSURANCE LAW AND LITIGATION § 4:1, at 29-30 (2013-14).

Ainsworth's Wage Loss Claims

The relevant PIP policy language here provides:[7]

> PART II – PERSONAL INJURY PROTECTION COVERAGE
> INSURING AGREEMENT
> Subject to the Limits of Liability, if you pay the premium for Personal Injury Protection Coverage, we will pay the following benefits to or on behalf of an insured person for losses or expenses incurred because of bodily injury sustained by an insured person caused by an accident and arising out of the ownership, operation, maintenance, or use of an automobile:
> . . . .
> 2. income continuation benefits to or on behalf of each insured person engaged in a remunerative occupation at the time of the accident.
>
> . . . .
> ADDITIONAL DEFINITIONS
> . . . .
> 3. "Income continuation benefits" means payment of an insured person's loss of income from work, subject to the following:
> a. income from work lost between the date of the accident and the 14th day after the accident will not be paid;
> b. [P]ayments will end the earliest of:
>     (i)    the date on which the insured person is reasonably able to perform the duties of his or her usual occupation;
>     (ii)   54 weeks from the date of the accident; or
>     (iii)  the date of the insured person's death; and
> c. income earned during the period income continuation benefits are being paid will be deducted from income continuation benefits.

---

[7] These policy provisions closely mirror chapter 48.22 RCW's personal injury protection statutes. On May 7, 1993, Washington State enacted a statute that required all state auto insurers to offer PIP no-fault coverage that was authorized, but not required to be offered, by the 1973 regulation. Like the disputed policy clause here, RCW 48.22.005(3) provides in part: "The benefit payment period begins fourteen days after the date of the automobile accident and ends at the earliest of the following: (a) The date on which the insured is reasonably able to perform the duties of his or her usual occupation." "[U]nlike other types of contracts, insurance policies must be interpreted in light of important public policy and statutory considerations." Mission Ins. Co. v. Guarantee Ins. Co., 37 Wn. App. 695, 699, 683 P.2d 215 (1984).

EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

Coverage under this Part II does not apply to bodily injury:

1. to any person who intentionally causes their own bodily injury;
2. resulting from any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;
3. due to war, whether or not declared, or to an act or condition incident to war;
4. resulting from the radioactive, toxic, explosive, or other hazardous properties of nuclear material;
5. to you or a relative while occupying a motor vehicle, other than a covered auto owned by you or furnished for your regular use;
6. to a relative while occupying a motor vehicle, other than a covered auto owned by the relative or furnished for the regular use of a relative; or
7. to any person who sustains bodily injury while using an automobile in the commission of a felony.

LIMITS OF LIABILITY

The Limits of Liability for losses or expenses incurred by or on behalf of one insured person because of bodily injury sustained in any one accident will be as follows:

. . . .

2. $10,000 for income continuation benefits, subject to a limit of $200 per week. However, the combined weekly payment an insured person may receive under personal injury protection coverage, workers' compensation, disability insurance, or other income continuation benefits may not exceed 85% of the insured person's weekly income at the time of the accident.

(Formatting omitted.)

Progressive agreed to pay income continuation benefits if Ainsworth lost income from work as a result of a bodily injury caused by an automobile accident. The burden rests on Ainsworth to demonstrate coverage under the policy language quoted above— that he lost Contour and Pagliacci wages, that all wage loss resulted from bodily injuries caused by the automobile accident, and that he was not reasonably able to perform the duties of his usual occupation.[8]

---

[8] We note problems can arise, however, in distinguishing between what must be proved by the insured in order to establish that a claim comes within the general coverage of the policy and what constitutes an exception to coverage. Here, the existence of coverage depends in part on the applicability of the "reasonably able to

69433-2-I/10

### Pagliacci Wage Loss Claim

The following material facts are undisputed. Ainsworth submitted a completed pre-printed application form for PIP wage loss benefits to Progressive indicating his current employers as Contour and Pagliacci. He answered, "yes" in response to the question, "Did you lose wages or salary as a result of your injury?" (Formatting omitted.) He also reported his "disability from work began" on July 14, 2010, the accident date. (Formatting omitted.) He signed the application and authorization to release medical information to Progressive. Six days after the accident, Becerra mailed letters to Pagliacci and Contour requesting Ainsworth's wage loss information from each employer. She enclosed Ainsworth's signed authorization to release the information and a preprinted wage and salary verification form. Pagliacci's payroll accountant, Pedro Z. Fernandez, completed the verification form on August 13, 2010. He indicated Ainsworth's job duties as "deliver pizza to customers," wage rate of $8.55 per hour, and worked an average of 12 hours per week. He also indicated Ainsworth had not returned to work since the accident date. As to whether Ainsworth was entitled to "a wage or salary continuation plan," Fernandez indicated "No." In response to a specific wage

---

perform the duties of his or her usual occupation" clause found under the definition of "income continuation benefits" in the insuring clause of the policy. In other words, this clause does not appear under the "Exclusions" or "Limitations" provisions. According to a noted authority on insurance law, "The best rule, under [these] circumstances, is probably to place the burden of proving that the proviso is not applicable on the insured. The insured has the burden of establishing a prima facie case of coverage. The carrier, therefore, should not automatically have the burden of proof with regard to each provision in the policy that happens to be written in an exclusionary fashion." 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 9:1, at 10-11 (6th ed. 2013) (footnote omitted).

information question, Fernandez provided weekly wage information from June 6, 2010,[9] through July 18, 2010. For each week, he indicated number of days worked, tip amounts earned, and gross earnings. He signed the verification form and included his job title and contact telephone number. He then faxed the completed form to Becerra the same day he signed it. The fax coversheet included Fernandez's full name, contact telephone number, fax number, Ainsworth's full name, and Becerra's full name and fax number.

Based on the wage loss information provided by Contour, Becerra prepared a PIP wage calculation sheet for Ainsworth's Contour wage loss claim but prepared no calculations for his Pagliacci wage loss claim. The calculation worksheet shows Becerra's wage loss calculations for Contour for the period of July 28, 2010, through October 14, 2010. For this period, Progressive does not dispute that Ainsworth's treating physician, Dr. Smith, declined to release him to work due to his accident-related disability.

Progressive periodically obtained medical disability information from Dr. Smith to determine eligibility for wage loss benefits. Dr. Smith's April 13, 2012 declaration testimony, submitted in support of Ainsworth's motion for partial summary judgment, stated:

> 3. The following points and opinions are on a more probable than not basis to a reasonable degree of medical certainty.
> 4. Tyler Ainsworth is my patient at Pacific Medical Center and has been for many years.
> 5. Mr. Ainsworth was injured in a motor vehicle collision on July 14, 2010 and I first saw Mr. Ainsworth in relation to his collision-related injuries on July 15, 2010. To this day, I continue to treat Mr. Ainsworth for his collision-related injuries.

---

[9] Ainsworth started working for Pagliacci on July 6, 2010.

-11-

6. I medically cleared Mr. Ainsworth to resume working full time on October 15, 2010, but with significant restrictions. I informed Mr. Ainsworth's insurer, Progressive, of this on September 21, 2010. I received no request for additional information or clarification of any kind from Progressive. Releasing a patient to work full time is not the same as declaring the patient to be able to perform their job duties. Progressive never asked me whether Mr. Ainsworth was unable to perform the duties of his job. I made no distinction between Mr. Ainsworth's warehouse type job and his job delivering pizzas and was not asked to make any such distinction by Progressive.

7. I have not yet medically cleared Mr. Ainsworth to resume working without restrictions. If Mr. Ainsworth's job duties at either job call for frequent lifting of items weighing close to 25 pounds, then Mr. Ainsworth is not reasonably able to perform the duties of his job due to his collision-related injuries to this day. Additionally, I consider being able to show up to work a job duty for both a warehouse type job and a job delivering pizzas. If Mr. Ainsworth was unable to show up to work because he was at appointments with his health care providers, including visits to my office, then he was unable to perform a duty of his job.

8. Mr. Ainsworth received massage therapy and physical therapy on my referral. Mr. Ainsworth also underwent mental health counseling for the severe depression he suffered following the collision on my referral. These modalities of treatment, along with visits to a physiatrist, were reasonable and necessary to treat Mr. Ainsworth's collision-related injuries. In fact, Mr. Ainsworth's condition regressed when he was not able to continue with his regular massage therapy.

Ainsworth's May 24, 2012 declaration testimony stated:

3. Christopher Smith, M.D. is my primary care doctor and has been for many years. I first saw Dr. Smith for treatment the day after the collision. Dr. Smith referred me to other health care providers and directed my return to work. As of October 15, 2010, Dr. Smith allowed me to return to work, but with restrictions. One of the restrictions was that I was not permitted to frequently lift items weighing close to 25 pounds. Another restriction is that he required me to take a 10 minute break every hour.

4. At the time of the collision I had two jobs. One job was at Contour, Inc. and the other was at Pagliacci Pizza. I presently have the same two jobs.

5. My job at Contour, Inc. is full-time. My job duties include moving stock, shipping and receiving items, and diagnosing and repairing broken cameras. The job requires frequently lifting items weighing more than 25 pounds. To this day, I remain unable to perform all of my job duties at Contour, Inc. due to the restrictions of Dr. Smith.

6. In October and November of 2010, I missed time from work to receive treatment from my health care providers for my injuries. In October I missed 22 hours and in November I missed 38 hours. My hourly rate of pay at the time was $13.46. My time loss is reflected on the pay stubs that were provided to Progressive Insurance. A copy of the pay stubs are attached as Exhibit 1.

7. My job at Pagliacci Pizza is a part-time job three evenings a week. My job duties include washing dishes, moving bulk cardboard, making boxes, restocking items, cleaning, laundry, carrying many pizzas and drinks at one time, and delivering many pizzas and drinks. The job requires frequently lifting items weighing more than 25 pounds. To this day, I remain unable to perform all of my job duties at Pagliacci Pizza due to the restrictions of Dr. Smith.

8. Beginning the day of the crash, I missed time from my job at Pagliacci Pizza due to my injuries. I could not even return to work at all until September 2010. Even then I continued to miss time from work because Pagliacci Pizza was reluctant to give me all of my hours back. More than a year after the collision passed before I was finally able to get all of my hours back. My hourly rate of pay was $8.55 and I worked an average of 22.95 hours every two week pay period. I also received tips averaging $236.12 every two week pay period. My time loss is reflected on the pay summaries from Pagliacci Pizza that were provided to Progressive Insurance. Copies of my pay summaries are attached as Exhibit 2.

Ainsworth testified during his deposition, quoted below, that pizza delivery was "not a light duty job." He stated the work was fast-paced and physically burdensome. He reiterated that he missed hours after Dr. Smith cleared him for restricted full time work due to "[e]xcruciating pain from [his] injuries from the accident."

Ainsworth also submitted numerous exhibits, including Progressive's electronic claim file for Ainsworth through March 25, 2011, and Dr. Smith's medical disability updates on Ainsworth noted above. In opposition to partial summary judgment, Progressive submitted Ainsworth's deposition testimony, Ainsworth's responses to requests for admission and interrogatories, and a declaration from Becerra's supervisor, Jaimee Manley, with various exhibits attached. It submitted no testimony from Becerra.

Progressive contends that the plain meaning of the income continuation benefit provision found in paragraph 3(b)(i) controls. That provision provides that wage loss benefits end when the insured "is <u>reasonably able</u> to perform the <u>duties of his or her</u>

-13-

usual occupation."[10] (Emphasis added.) Progressive claims that Ainsworth is able to perform his usual occupation because Dr. Smith released him to work full-time. Even viewing the policy clause in a light most favorable to Progressive, its meaning is susceptible to only one reasonable interpretation. Progressive's argument ignores the critical term "usual." The common meaning of "usual" is "habitual or customary: her usual skill." DICTIONARY.COM, http://dictionary.reference.com (last visited Jan. 24, 2014).[11] This is the ordinary meaning that an average purchaser of insurance would give the term. See Holden, 169 Wn.2d at 756 (courts interpret insurance contracts from the viewpoint of the average purchaser).

The undisputed evidence shows Dr. Smith released Ainsworth to work full-time under "significant restrictions." Dr. Smith's written status update to Progressive on September 21, 2010, indicated those restrictions limited Ainsworth from "lifting no more than 50 pounds. Rarely more than 25 pounds. He will need more frequent rest breaks. Ten minutes per hour." On October 15, 2010, Dr. Smith restricted Ainsworth to no frequent lifting of 25 pound items and 10 minute rest breaks every hour. As of April 13, 2012, Dr. Smith had not yet cleared Ainsworth "to resume working without restrictions." As quoted below, Dr. Smith's undisputed declaration testimony concluded that so long as Ainsworth's job duties involve frequent lifting of 25 pound items, he "is not reasonably able to perform the duties of his job . . . ."

---

[10] Ainsworth does not contend this provision is ambiguous.

[11] "'[W]e may discern the plain meaning of nontechnical statutory terms from their dictionary definitions.'" State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010) (alteration in original) (quoting State v. Cooper, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006)).

Ainsworth's testimony shows that the "duties of his <u>usual</u> occupation" at Pagliacci and Contour, require him to routinely lift 25 pounds or more. His November 22, 2011 deposition taken by Progressive establishes his job duties for both employers routinely require him to lift items over 25 pounds. Progressive's attorney questioned Ainsworth about the medical restriction's effect on his usual job duties at Contour and Pagliacci.

[Contour]
Q. Your job description, as I understood you to say, was that you would have to lift a hundred pounds repeatedly, is that correct?
A. Yes.
Q. Okay. Is that what you're actually doing?
A. I can't do that.
Q. Okay, you can't do that—
A. Right now.
Q. Okay. So, if you could do that, would you be repeatedly lifting a hundred pounds in your current job?
A. I would be lifting 25 to a hundred pounds, moving cases and various units.
Q. And I understand that you're not currently doing that; why?
A. I'm on weight restrictions from my doctor.
Q. Who has you on the weight restrictions?
A. Dr. Christopher Smith.

[Pagliacci]
Q. You mentioned that you deliver pizza for Pagliacci, so you know it's not a light duty job; what about the job do you think makes it either medium or heavy duty?
A. Well, where I work we have anywhere from 500 to 750 pizzas on a busy night. On a slow night we deliver at least 300 pizzas to 400 pizzas. And in order to do that, you have to be quick, you have to run fast, you have to carry large loads of pizzas, put them in your car, get in and out of the car, over and over and over again. And maybe somebody who's in top physical condition, it's a very easy job and not very heavy lifting, but to other people, it's difficult. To me, it's not a light duty job, it's not like other places.

Viewing the evidence in a light most favorable to Progressive, the record evidence shows Ainsworth was not reasonably able to perform his usual work duties at Pagliacci due to the significant weight restrictions imposed by Dr. Smith.

Our review of the record shows, and Progressive does not dispute, that it paid <u>no</u> wage loss benefits related to Ainsworth's Pagliacci job for <u>any</u> period of time loss. And it submitted nothing in response to partial summary judgment or on appeal explaining this failure. Instead, it merely argues that Ainsworth's medical release to return to full-time work, under the policy, justified the no entitlement to wage loss decision. The undisputed record shows that Progressive took no further action to adjust his Pagliacci wage loss claim once it received Pagliacci's completed wage and salary verification form[12] for the <u>undisputed</u> time loss period of July 28, 2010, through October 15, 2010, and for the period after.

Progressive's response to Ainsworth's partial summary judgment motion consists almost entirely of conclusory and argumentative assertions and evidence quoted out of context. For example, Progressive claimed, based on the Manley declaration, that it "accepted Ainsworth's PIP wage loss claim and began making payments according to the specific terms and conditions of the policy under Washington law." Br. of Appellant at 5. It argues, "Progressive continued to make these payments throughout Ainsworth's convalescence, until October 15, 2010, when he was cleared by his doctor to return to work full-time." Br. of Appellant at 5. While this testimony may address Progressive's discussion about the Contour claim, it avoids any discussion about the Pagliacci claim, for which it paid no benefits for any period. The testimony further states that Ainsworth amended his complaint "to include an additional claim for wage loss at Pagliacci." As further example, Progressive argued "Ainsworth deliberately chose treatment

---

[12] There is no mention of the Pagliacci wage loss claim in Progressive's claim file until Progressive stopped paying wage loss after Ainsworth was released to work full-time with restrictions and this dispute ensued.

appointments knowing that they would occur during his working hours." Br. of Appellant at 3. Progressive failed to cite any record evidence to support this assertion. The clear implication of this unsupported argument is to suggest an improper motive for Ainsworth's timing of medical appointments during working hours. We address this assertion below.

Progressive relies on Tyrrell v. Farmers Ins. Co. of Wash., 140 Wn.2d 129, 994 P.2d 833 (2000), and Foote v. Viking Ins. Co. of Wisconsin, 57 Wn. App. 831, 790 P.2d 659 (1990), to argue, "In the State of Washington, PIP provisions have been narrowly construed." Br. of Appellant at 14. Nothing in either of these cases supports this argument.[13] As noted above, "courts liberally construe insurance policies to provide coverage wherever possible." Bordeaux, 145 Wn. App. at 694. Plaintiff also relies on Zoller v. Transamerica Ins. Co., 215 N.J. Super. 552, 522 A.2d 479 (1987), to argue that "if the insured can work, and chooses not to, the policy does not apply." Br. of Appellant at 15. Zoller is inapplicable because it did not address the policy clause at issue here.[14]

In sum, Progressive submitted no evidence that raises a genuine issue of material fact on the Pagliacci wage loss claim. None of Progressive's partial summary

---

[13] We note Progressive fails to cite any language or page number from Tyrell or Foote to support this argument.

[14] Zoller supports Ainsworth's position. It states, "There may be instances under the PIP statute where the insured suffers a partial disability and continues to work, but has a loss of income. In that circumstance, the measure of income loss is the difference between what the insured would have earned had injury not occurred and what he or she did earn. However, the insured still must demonstrate that the lost income was due solely to bodily injury incapacity." Zoller, 215 N.J. Super. at 559 (citation omitted).

judgment submissions address why it never paid Ainsworth for his undisputed Pagliacci wage loss for the period from July 28, 2010, through October 15, 2010, even though it paid his Contour wage loss for this period. Progressive does not dispute that Dr. Smith confirmed that Ainsworth's disability for this period prevented his release to work. It submitted no evidence to rebut or raise questions about any of Dr. Smith's opinions or conclusions.

In addition, Progressive's partial summary judgment submissions failed to raise any genuine material issues of fact on the question of whether Ainsworth was "reasonably able to perform the duties of his or her usual occupation."[15] Progressive submitted nothing challenging Dr. Smith's opinions and conclusions and Ainsworth's job description.

### Contour Wage Loss Claim

Progressive argues that "PIP benefits are not intended for attending appointments." Br. of Appellant at 16 (formatting omitted). It cites to Patton v. Commissioner of Social Security, No. 10-13314, 2011 WL 4577250 (E.D. Mich. Sept. 30, 2011) (unpublished), and In re Gagnon, 147 N.H. 366, 787 A.2d 874 (2001). Patton and Gagnon are inapposite. Patton involved an administrative Social Security disability hearing and Gagnon involved a workers' compensation board appeal. Neither case

---

[15] Progressive argues, "The claim of lost wages made by Ainsworth [is] wholly unsupported by anything other than self-serving, conclusory statements." Br. of Appellant at 20. This argument is unavailing. As discussed above, Ainsworth submitted sworn testimony via declaration. He also submitted the sworn declaration of Dr. Smith. Civil Rule 56 permits reliance on affidavits in support of a summary judgment motion, provided the affiant testifies to admissible facts based on personal knowledge. CR 56(c), (e). Progressive does not argue that Ainsworth lacked personal knowledge or testified to inadmissible facts.

pertains to automobile insurance PIP wage loss benefits. Progressive's assertion frustrates the very purpose of PIP benefits discussed above—to provide vehicle accident victims quick and adequate compensation for economic losses regardless of fault. Wage loss compensation is one of the basic economic losses covered by PIP insurance policies. As noted above, wage loss compensation reimburses the injured claimant for wages lost which he would have received had he not been injured. It "provides protection from economic hardship caused by the loss of a wage earner's income."[16] 12 PLITT, ET AL, supra, § 171:53 at 171-54 to -55.

As quoted above, Ainsworth submitted evidence that he missed time from work for reasonably necessary medical appointments to treat his bodily injuries sustained in the automobile accident. Ainsworth submitted his pay stubs to verify the time loss. Dr. Smith testified by declaration that he prescribed massage and physical therapy to treat Ainsworth's bodily injuries. He also referred Ainsworth for mental health counseling for severe depression suffered as a result of the accident and injuries. He also referred Ainsworth for treatment with a physiatrist (rehabilitation physician). Progressive does not dispute that these medical treatments were reasonable, necessary, and related to the bodily injuries Ainsworth sustained in the accident. It is undisputed that Ainsworth would not have lost time from work to attend these medical appointments had it not been for the accident.

Progressive cites to no policy limitation, exclusion, or provision that precludes compensation for wages lost while attending reasonable and necessary medical appointments to treat accident-related bodily injury. The insuring agreement plainly

---

[16] Nothing in our review of the PIP legislative history supports Progressive's argument.

covers wage loss benefits for "losses or expenses incurred because of bodily injury . . . ."; see Foster v. Aetna Cas. & Sur. Co., 240 N.J. Super. 122, 572 A.2d 680 (1990) (plaintiff was entitled to reimbursement for gasoline expense, parking fees, tolls, and lost wages incurred in traveling to medical facility 35 miles from plaintiff's home where travel was reasonable and necessary because no closer facility was available).

We are unpersuaded by Progressive's unsupported assertion that time loss from work to attend reasonably necessary medical appointments is not compensable under PIP benefits. Because Ainsworth lost wages he would have received had it not been for the accident, in order to obtain reasonably necessary medical treatment, he is entitled to wage loss compensation under the plain reading of the policy.

### Duty to Mitigate

Progressive claims that Ainsworth failed to mitigate his damages by setting appointments during work hours.[17] Progressive specifically argues that Ainsworth deliberately scheduled appointments during working hours rather than scheduling appointments on weekends and outside normal work hours. Progressive raises no genuine issues of material fact on its failure to mitigate claim. The duty to mitigate damages applies to a claim for lost earnings. Kubista v. Romaine, 87 Wn.2d 62, 67, 549 P.2d 491 (1976). "The doctrine of mitigation of damages, sometimes referred to as the doctrine of avoidable consequences, prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was committed." Bernsen v. Big Bend Elec. Co-op., Inc., 68 Wn. App. 427, 433, 842 P.2d

---

[17] Progressive does not claim failure to mitigate as to Ainsworth's Pagliacci wage loss claim. Even assuming it asserts this claim, Progressive submitted no evidence that raises a genuine material fact issue.

1047 (1993). The party asserting the claim of an unreasonable failure to mitigate damages bears the burden of proof. <u>Cox v. Keg Rests. U.S., Inc.</u>, 86 Wn. App. 239, 244, 935 P.2d 1377 (1997); 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 33.01. Here, Progressive bears the burden to establish that Ainsworth unreasonably failed to mitigate damages.[18] Our review of the record shows Progressive raised no genuine material issues of fact on its failure to mitigate claim.

Ainsworth submitted evidence that he missed time from work at Contour due to the following medical appointments:[19]

> <u>October 2010</u>
> 10/18/2010 at 8:10 am
> 10/19/2010 at 5:00 pm
> 10/25/2010 at 12:00 pm
> 10/25/2010 at 4:00 pm
> 10/25/2010 at 4:30 pm
> 10/28/2010 at 9:00 am
>
> <u>November 2010</u>
> 11/01/2010 at 2:00 pm
> 11/02/2010 at 8:00 am
> 11/02/2010 at 9:00 am
> 11/02/2010 at 5:00 pm
> 11/04/2010 at 9:00 am
> 11/08/2010 at 2:00 pm
> 11/12/2010 at 8:00 am
> 11/18/2010 at 9:00 am
> 11/22/2010 at 6:00 pm

---

[18] Progressive improperly places the burden to prove mitigation on Ainsworth. Its brief on appeal argues, "[Ainsworth] never provided evidence that he could not make appointments before or after work." Br. of Appellant at 17. It also argues, "Ainsworth has failed to show that he could not seek appointments with medical providers outside of work hours, but rather enlarged his alleged damages by voluntarily missing work when he did not have to. . . . [H]e is intentionally manufacturing his damages . . . ." Reply Br. of Appellant at 13.

[19] Progressive submitted no evidence to show which of Ainsworth's health care providers he saw at these times. We also note that these appointments were all scheduled for early morning, lunch hours, and at the end of the day.

11/24/2010 at 11:20 am
11/29/2010 at 1:00 pm

Progressive raised no genuine material fact issues that the above appointment schedule was unreasonable under the circumstances. Progressive assumes without citation to authority that the duty to mitigate is satisfied only if an injured claimant schedules medical appointments on weekends or outside of normal business hours. Progressive also suggests this duty requires an injured claimant to seek out medical care providers who see patients on weekends and outside of normal business hours. The burden rests on Progressive to show that the timing of medical appointments with Ainsworth's health care providers was unreasonable. Progressive's mere submission of general appointment times for various healthcare providers falls short of meeting its burden to show Ainsworth unreasonably failed to mitigate his damages.

We conclude that Progressive raises no genuine material issues of fact that Ainsworth unreasonably failed to mitigate Contour damages related to his medical appointments.

### Insurance Fair Conduct Act Violation (RCW 48.30.015)

Progressive challenges the trial court's IFCA award premised on two grounds.[20] First, it contends that it violated no IFCA requirements because it reasonably denied

---

[20] Progressive claims for the first time in its reply brief on appeal that material issues of fact remain as to whether its wage loss benefit denial was unreasonable. We will not consider issues argued for the first time in the reply brief. In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). The reply brief is limited to a response to the issues in the responding brief. To address issues argued for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal. RAP 10.3(c); State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994). Even assuming Progressive timely raised the issue, the record amply demonstrates no genuine material issues of fact.

Ainsworth's wage loss claim according to the policy terms, and IFCA only applies to coverage, not valuation disputes. It also contends that the wage loss benefits awarded here do not constitute "actual damages" subject to IFCA enhancement. It claims, "The penalty for IFCA violations, like with bad faith or Consumer Protection Act claims, should only apply to the harm caused above and beyond the denial of benefits." Br. of Appellant at 28.

Under IFCA, if the trial court finds that an insurer "acted unreasonably in denying a claim for coverage or payment of benefits," RCW 48.30.015(2), or that it violated one of the regulations enumerated in RCW 48.30.015(5),[21] the court "may . . . increase the total award of damages to an amount not to exceed three times the actual damages." RCW 48.30.015(2). Subsection (1) describes two separate acts giving rise to an IFCA claim. The insured must show the insurer unreasonably denied a claim for coverage or

---

[21] IFCA provides:
"(5) A violation of any of the following is a violation for the purposes of subsections (2) and (3) of this section:
"(a) WAC 284-30-330, captioned 'specific unfair claims settlement practices defined';
"(b) WAC 284-30-350, captioned 'misrepresentation of policy provisions';
"(c) WAC 284-30-360, captioned 'failure to acknowledge pertinent communications';
"(d) WAC 284-30-370, captioned 'standards for prompt investigation of claims';
"(e) WAC 284-30-380, captioned 'standards for prompt, fair and equitable settlements applicable to all insurers'; or
"(f) An unfair claims settlement practice rule adopted under RCW 48.30.010 by the insurance commissioner intending to implement this section. The rule must be codified in chapter 284-30 of the Washington Administrative Code." RCW 48.30.015. Ainsworth alleged various violations under the insurance commissioner regulations noted above that support an IFCA violation. We also note that Progressive argues for the first time in its reply brief that its claim investigation was reasonable. Reply Br. of Appellant at 17-18. The argument is untimely. RAP 10.3(c); Hudson, 124 Wn.2d at 120; Sacco, 114 Wn.2d at 5. Even assuming Progressive timely raised the issue, the record evidence raises no material issues of fact.

that the insurer unreasonably denied payment of benefits. If either or both acts are established, a claim exists under IFCA.

Here, whether cast as an unreasonable denial of a claim for coverage or payment of benefits, the undisputed record discussed above establishes IFCA violations premised on both acts—an unreasonable denial of wage loss benefit coverage and unreasonable denial of wage loss payments—involving both employers.[22] For example, the undisputed record shows Progressive unreasonably denied coverage and payment for Ainsworth's Pagliacci wage loss. Progressive never adjusted this claim, investigated it further after receiving wage verification information, or paid any period of time loss. A reasonable jury could reach only one conclusion on this record—Progressive unreasonably denied coverage and unreasonably denied payment of Ainsworth's wage loss benefits.

We are also unpersuaded by Progressive's claim that "payment of benefits for Ainsworth's loss was based on a reasonable interpretation of the policy . . ." Br. of Appellant at 22. As discussed above, Progressive's interpretation of the policy ignored the plain text of the income continuation benefit clause. As noted above, Progressive acknowledged that the relevant income continuation clause is plain and unambiguous.[23] The record demonstrates that Progressive's coverage and payment denial was unreasonable as a matter of law.

---

[22] As discussed below, we are unpersuaded by Progressive's attempt to recast the claims as a "valuation dispute" to avoid IFCA's application. Br. of Appellant at 23.

[23] The goal of statutory interpretation is to effectuate the intent of the legislature, and if the meaning of a statute is plain, enforcing it as written effectuates the legislative intent. Burns v. City of Seattle, 161 Wn.2d 129, 140, 164 P.3d 475 (2007).

Progressive next challenges the trial court's IFCA award of "actual damages." The trial court doubled "the amount of actual damages under RCW 48.30.015(2) to $10,916.36." Progressive argues the trial court's wage loss benefit award does not constitute "actual damages" subject to IFCA's treble damages provision. It argues the trial court relied on "an extra-contractual theory of law." Br. of Appellant at 24. It also argues, "The penalty for IFCA violations, like with bad faith or CPA claims, should only apply to the harm caused above and beyond the denial of benefits." Br. of Appellant at 28. It relies on bad faith and CPA case authority to make its point.

Ainsworth is correct that in Progressive's response to the partial summary judgment motion, "Progressive's argument that the trial court improperly doubled Ainsworth's damages is raised for the first time on appeal." Resp't's Br. at 32. Progressive does not address or rebut this assertion. Our review of Progressive's partial summary judgment response indicates it made the present arguments for the first time on appeal. It is well settled that "[w]e will not review an issue, theory, argument, or claim of error not presented at the trial court level." Lindblad v. Boeing Co., 108 Wn. App. 198, 207, 31 P.3d 1 (2001). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Failure to do so precludes raising the error on appeal. Smith, 100 Wn.2d at 37. "While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised." Karlberg v. Otten, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012). Progressive failed to preserve the alleged error it now asserts on appeal. And it fails to argue why an exception to this rule applies in this case.

Attorney Fees and Costs

The trial court awarded attorney fees and costs to Ainsworth under IFCA (RCW 48.30.015(3)) and Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991). CP 438. We affirm the award.

Under Olympic Steamship, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Olympic S.S., 117 Wn.2d at 53. The rule does not apply where the parties solely dispute "the value of the claim presented under the policy." Dayton v. Farmers Ins. Grp., 124 Wn.2d 277, 280, 876 P.2d 896 (1994). In sum, the rule applies in coverage disputes but not in valuation disputes. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 147, 930 P.2d 288 (1997).

To avoid the Olympic Steamship rule, Progressive attempts to characterize this case as a valuation dispute, as opposed to a coverage dispute. We are not persuaded by this claim. "Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." Leingang, 131 Wn.2d at 147 (quoting McGreevy v. Oregon Mut. Ins. Co., 128 Wn.2d 26, 33, 904 P.2d 731 (1995)). Here, Progressive denied Ainsworth's claim for lost Contour wages on the basis that payments terminated under the plain policy language. It never challenged Ainsworth's valuation of the claim. Further, it never adjusted Ainsworth's Pagliacci claim for any time period. Because this

-26-

case clearly involves a coverage dispute for purposes of an award of fees and costs under Olympic Steamship, we affirm the trial court's award of fees and costs.[24]

Ainsworth also requests attorney fees and costs on appeal. Because he prevailed in his coverage dispute below, we award reasonable appellate costs and fees, subject to compliance with RAP 18.1. Safeco Ins. Co. v. Woodley, 150 Wn.2d 765, 773-74, 82 P.3d 660 (2004); Olympic Steamship, 117 Wn.2d at 54.

## CONCLUSION

In sum, Progressive raised no genuine material issues of fact related to whether Ainsworth was entitled to wage loss compensation under the policy's insuring agreement and whether Progressive violated IFCA when it unreasonably denied a claim for coverage and unreasonably denied payment of benefits. Progressive also failed to preserve for appeal its challenge to the actual damages awarded under IFCA. We affirm the trial court's order on partial summary judgment.

WE CONCUR:

---

[24] Given our disposition, we need not determine whether the trial court properly awarded fees and costs under RCW 48.30.015(3). We note, however, that Progressive's sole timely argument against RCW 48.30.015(3) fees and costs is that Ainsworth failed to prove his IFCA claim. Br. of Appellant at 31-32. This argument fails for the reasons discussed above.